UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HADIYAH CHARLES,

Plaintiff,

-against-

THE CITY OF NEW YORK, et. al.,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND SPOLIATION SANCTIONS

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants Pamela Benites,*
*Anthony Famighetti and Raymond Williams*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Mark D. Zuckerman*
*Tel: (212) 356-3519*
*Matter No. 2012-054049*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL STATEMENT ................................................................................................... 1

ARGUMENT

POINT I

THERE WAS PROBABLE CAUSE TO
SUMMONS PLAINTIFF FOR OBSTRUCTION
OF GOVERNMENTAL ADMINISTRATION
AND DISORDERLY CONDUCT ...........................................................................8

A. Obstruction of Governmental Administration .......................................8

    1. Official Function.............................................................................10

    2. Interference with the Defendants' Duties ......................................11

B. Disorderly Conduct ..............................................................................14

    1. Unreasonable Noise .......................................................................14

    2. Refusal to Comply with the Officers' Orders................................15

POINT II

PLAINTIFF'S FIRST AMENDMENT
RETALIATION CLAIM MUST FAIL....................................................................16

POINT III

THE DEFENDANT OFFICERS ARE ENTITLED
TO QUALIFIED IMMUNITY ...............................................................................17

POINT IV

ALTERNATIVELY, SPOLIATION SANCTIONS
ARE APPROPRIATE FOR PLAINTIFF'S
DESTRUCTION OF HER VIDEO OF THE
INCIDENT...............................................................................................................21

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

Adams v. Williams,
    407 U.S. 143 (1972).................................................................................................... 11

Adonis v. Court Officer Coleman,
    08 CV 1726 (MGC), 2009 U.S. Dist. LEXIS 87389 (S.D.N.Y. Sept. 23, 2009) ............. 15, 19

Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,
    473 F.3d 450 (2d Cir. 2007) ........................................................................................ 21

Anderson v. Creighton,
    483 U.S. 635 (1987)............................................................................................ 17, 18, 19

Anderson v. Recore,
    317 F.3d 194 (2d Cir. 2003) ........................................................................................ 19

Berger v. Schmitt,
    91 F. App'x 189 (2d Cir. 2004)..................................................................................... 9

Bryant v. City of New York,
    99 CV 11237 (LMM), 2003 U.S. Dist. Lexis 21642 (S.D.N.Y. Dec. 1, 2003) ...................... 16

Cameron v. City of New York,
    598 F.3d 50 (2d Cir. 2010) .......................................................................................... 14

Cartier v. Lussier,
    955 F.2d 841 (2d Cir. 1992) ........................................................................................ 18

Chambers v. NASCO, Inc.,
    501 U.S. 32 (1991).................................................................................................... 22

Crenshaw v. City of Mount Vernon,
    372 Fed. Appx. 202 (2d Cir. 2010)............................................................................... 15

Curley v. Village of Suffern,
    268 F.3d 65 (2d Cir. 2001) .......................................................................................... 16

Decker v. Campus,
    981 F. Supp. 851 (S.D.N.Y. 1997) ............................................................................... 9

Fujitsu Limited v. Federal Express Corp.,
    247 F.3d 423 (2d Cir. 2000) ........................................................................................ 21

Harlow v. Fitzgerald,
    457 U.S. 800 (1992).................................................................................................... 18

**Cases**                                                                                  **Pages**

Hunter v. Bryant,
    502 U.S. 224 (1991)................................................................................. 17

Husbands ex. rel. Forde v. City of New York,
    05 Civ. 9252, 2007 U.S. Dist. LEXIS 61042 (S.D.N.Y. April 16, 2007)................................. 9

Illinois v. Wardlow,
    528 U.S. 119 (2000)................................................................................. 10

Jaegly v. Couch,
    439 F.3d 149 (2d Cir. 2006) ........................................................................ 8

John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,
    845 F.2d 1172 (2d Cir. 1988) ....................................................................... 22

Kinzer v. Jackson,
    316 F.3d 139 (2d Cir. 2003) ........................................................................ 8

Koch v. Greenberg,
    07 CV 9600 (BSJ) (DF), 2011 U.S. Dist. LEXIS 114811 (S.D.N.Y. Aug. 16, 2011) ........... 24

Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995) ......................................................................... 8

Linehan v. State,
    201 A.D.2d 706, 608 N.Y.S.2d 294 (App. Div. 1994) ....................................... 9-10

Malley v. Briggs,
    475 U.S. 335 (1986)................................................................................. 18

Marcavage v. City of New York,
    689 F.3d 98 (2d Cir. 2012) ...................................................................... 8, 9

Maryland v. Pringle,
    540 U.S. 366, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003)......................................... 8

Matteo v. Kohl's Department Stores, Inc.,
    09 CV 7830 (RJS), 2012 U.S. Dist. LEXIS 32193 (S.D.N.Y. Mar. 6, 2012) ........................ 23

Mitchell v. Forsyth,
    472 U.S. 511 (1985)................................................................................. 17

Mozzochi v. Borden,
    959 F.2d 1174 (2d Cir. 1992) ...................................................................... 16

**Cases**             **Pages**

O'Donnell v. Police Officer Card,
    11 Civ. 3297 (ER), 2013 U.S. Dist. LEXIS 106609 (S.D.N.Y. July 26, 2013) ...................... 20

Oliveira v. Mayer,
    23 F.3d 642 (2d Cir. 1994),
    cert. denied, 513 U.S. 1076 (1995) ....................................................................................... 18

Ortiz v. City of New York,
    11 Civ. 7919 (JMF), 2013 U.S. Dist. LEXIS 136897 (S.D.N.Y. Sept. 24, 2013) .................. 21

Pearson v. Callahan,
    555 U.S. 223, 129 S. Ct. 808 (2009) ............................................................... 17, 18, 19

People v. Bakolas,
    59 N.Y. 2d 51 (1983) ........................................................................................................ 14

People v. Beam,
    866 N.Y.S.2d 564 (N.Y. Sup. Ct. 2008) ............................................................................ 9

People v. Jackson,
    2007 N.Y. Misc. LEXIS 8264 (Crim. Ct. N.Y. Cty) ............................................................ 14

People v. Munafo,
    50 N.Y. 2d 326 (1980) ...................................................................................................... 14

People v. Romeo,
    9 A.D.3d 744, 779 N.Y.S.2d 860 (App. Div. 2004) ................................................................ 9

People v. Tarver,
    188 A.D.2d 938 (3rd Dep't 1992) ....................................................................................... 9

Petway v. City of New York,
    12 Civ. 279 (ARR) (LB),
    2014 U.S. Dist. LEXIS 28361 (E.D.N.Y. Mar. 4, 2014) ....................................... 11, 12, 13, 20

Rasmussen v. City of New York,
    766 F. Supp. 2d 399 (E.D.N.Y. 2011) ............................................................................... 9, 14

Reilly v. Natwest Mkts. Grp. Inc.,
    181 F.3d 253 (2d Cir. 1999) ............................................................................................... 22

Residential Funding Corp. v. DeGeorge Fin. Corp.,
    306 F.3d 99 (2d Cir. 2002) ............................................................................................ 22, 24

Saucier v. Katz,
    533 U.S. 194 (2001) ...................................................................................................... 17, 19

**Cases**                                                                 **Pages**

Terry v. Ohio,
    392 U.S. 1 (1968)................................................................................ 10

Toback v. City of Long Beach,
    948 F. Supp. 167 (E.D.N.Y. 1996) ...................................................... 14

United States v. Bayless,
    201 F.3d 116 (2d Cir. 2000) ............................................................... 11

United States v. Muhammad,
    463 F.3d 115 (2d Cir. 2006) ............................................................... 10

United States v. Sharpe,
    470 U.S. 675 (1985)........................................................................... 10

United States v. Sokolow,
    490 U.S. 1 (1989)............................................................................... 10

Warren v. Dwyer,
    906 F.2d 70 (2d Cir. 1990),
    cert. denied, 498 U.S. 967 (1990) ...................................................... 18

Washington Square Post No. 1212 v. Maduro,
    907 F.2d 1288 (2d Cir. 1990) ............................................................. 17

West v. Goodyear Tire & Rubber Co.,
    167 F.3d 776 (2d Cir. 1999) .......................................................... 21, 22

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996) ................................................................. 8

Wilder v. Village of Amityville,
    288 F. Supp. 2d 341 (E.D.N.Y. 2003) ............................................. 9, 14

Ying Jing Gan v. City of New York,
    996 F.2d 522 (2d Cir. 1993) ............................................................... 11

Young v. County of Fulton,
    160 F.3d 899 (2d Cir. 1998) ............................................................... 19

Zellner v. Summerlin,
    494 F.3d 344 (2d Cir. 2007) ............................................................... 20

| **Statutes** | **Pages** |
|---|---|

42 U.S.C. § 1983 ................................................................................................ 11

N.Y.. Penal Law §195.05 ................................................................................... 8

N.Y. Penal Law §240.20 ............................................................................. 14, 15

N.Y..Penal Law § 240.20(2) ......................................................................... 6, 15

N.Y. Penal Law §240.20(6) ............................................................................... 15

**Treatises**

Moore's Federal Practice, § 37.121 (2011) ....................................................... 24

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X

HADIYAH CHARLES,

                                    Plaintiff,          **DEFENDANTS'**
                                                        **MEMORANDUM OF LAW IN**
                    -against-                           **SUPPORT OF MOTION FOR**
                                                        **SUMMARY JUDGMENT AND**
THE CITY OF NEW YORK, et. al.,                          **SPOLIATION SANCTIONS**

                                    Defendants.         12 Civ. 6180 (SLT)(SMG)

-----------------------------------------------------------------X

## PRELIMINARY STATEMENT

Defendants Raymond Williams, Pamela Benites and Anthony Famighetti hereby respectfully submit their Memorandum of Law in Support of their motions for summary judgment, spoliation sanctions and the dismissal of plaintiff's claims against them.[1] For the reasons more fully set forth herein, there was indisputably probable cause for the summons issued to plaintiff when she unlawfully interfered with a stop that P.O.s Williams and Benites were conducting. Additionally, the officers should be afforded qualified immunity. Alternatively, plaintiff's complaint should be dismissed as a sanction for plaintiff's spoliation of the most crucial evidence in the case, the video that she took of the subject incident.

## FACTUAL STATEMENT

On June 5, 2012, defendant NYPD police officers Raymond Williams and Pamela Benites were attempting to conduct a lawful stop of three young males huddled around a bicycle on Clifton Place in Brooklyn who fit the description of perpetrators of a robbery/grand larceny

---

[1] The instant motion for summary judgment is not intended to address plaintiff's municipal liability claims against the City of New York and former NYPD Police Commissioner Raymond W. Kelly in his official capacity. Limited discovery is proceeding on those claims in accordance with the Order of Chief Magistrate Judge Gold of July 7, 2014. However, should defendants' motion herein for the spoliation sanction of dismissal of plaintiff's amended complaint be granted, defendants respectfully submit that this would resolve the entire case.

pattern that existed in the neighborhood.  The robbery/grand larceny pattern was documented in the NYPD Command Conditions Report for that week and the pattern consisted of the theft of cell phones/electronics by one or more young black males who then escaped on bicycle.  The officers were informed at their roll call that the thefts were made with the threat of physical violence.  The officers observed a suspicious bulge in the pocket of one of the young males as they approached and prior to conducting the stop, as well as suspicious movements by the male with the bulge in his pocket, thus, a "pat down" frisk of one of the male's waist area was conducted.  P.O. Benites feared for her safety as she approached the males.  (Defendants' 56.1 Statement, hereinafter "Defendants' 56.1", ¶ 1)

Upon her return from work in the early evening of June 5, 2012, plaintiff Hadiyah Charles observed the aforementioned interaction involving the NYPD police officers Williams and Benites and the three males on a sidewalk on Clifton Place in Brooklyn.  (Defendants' 56.1, ¶ 2)

Plaintiff passed her residence on Clifton Place and instead approached the interaction between P.O.s Williams and Benites and the three males.  (Defendants' 56.1, ¶ 3)

As plaintiff approached, she got close enough to the aforementioned interaction to hear the conversation between the three males and P.O.s Williams and Benites.  (Defendants' 56.1, ¶ 4)

Plaintiff did not know any of the three males personally who were stopped by P.O.s Williams and Benites.  (Defendants' 56.1, ¶ 5)

As plaintiff approached the aforementioned police interaction, she "wondered" why the males were being stopped.  (Defendants' 56.1, ¶ 6)

Plaintiff believed that because she was a "taxpaying citizen that lives on the block, [she could choose] to utilize [her] rights as a citizen to ask a question about a process on the block that [she] reside[s] on." (Defendants' 56.1, ¶ 7)

Plaintiff then proceeded to ask the males who were stopped, "Are the cops bothering you?," to which one of the males answered, "Yes." Plaintiff was two feet from the officers when she asked that question of one of the males. (Defendants' 56.1, ¶ 8)

Then, according to plaintiff, one of the males asked the officers why he was being stopped, at which time plaintiff was just six feet away from the interaction. (Defendants' 56.1, ¶ 9)

Plaintiff contends that she then asked the police officers why the males had been stopped, while she was just five feet away from them. P.O. Williams testified at deposition that plaintiff's first words to the officers were, "excuse me, why are you harassing these boys?" (Defendants' 56.1, ¶ 10)

Plaintiff contends that the officers ignored her question. (Defendants' 56.1, ¶ 11)

Plaintiff contends that she then asked the officers a second time why the males had been stopped. (Defendants' 56.1, ¶ 12)

According to plaintiff, P.O. Williams responded that the interaction was "police business." (Defendants' 56.1, ¶ 13)

Plaintiff then contends that she said to P.O. Williams that she was "a tax paying citizen and as such was asking him what this process was." (Defendants' 56.1, ¶ 14)

According to plaintiff, P.O. Williams again answered that the officers were conducting "police business," and that plaintiff was interfering with the officers' work after she asked yet again why the officers had stopped the males. (Defendants' 56.1, ¶ 15)

According to plaintiff, she then took a step back voluntarily and said, "if you don't mind, I will videotape your process," leaving her 6 feet away from the interaction according to her.  (Defendants' 56.1, ¶ 16)

The officers told plaintiff that she could video record the incident, but at a "safe" distance."  (Defendants' 56.1, ¶ 17)

According to plaintiff, P.O. Benites then "proceeded to ask her to step back some more" and that plaintiff was continuing to interfere with "police business."  (Defendants' 56.1, ¶ 18)

Plaintiff contends that she then stepped back "probably another foot"  in response to P.O. Benites' order.  (Defendants' 56.1, ¶ 19)

Plaintiff contends that she then started to videotape using an IPhone, which continued even as a police back up vehicle arrived and at least until plaintiff was eventually handcuffed.  (Defendants' 56.1, ¶ 20)

One of the males stopped stated that plaintiff was only "two feet" from the officers when she began to videotape.  His mother, a non-party witness, testified that at one point, plaintiff and P.O. Benites were "face to face," "one foot apart."  Two other non-party witnesses testified that plaintiff's outstretched arm was "three to four feet" away from the officers when plaintiff had the camera in her hand and tried to video the officers, including but not limited to their badge numbers.  P.O. Williams and P.O. Benites both testified that plaintiff "was walking back and forth around [them]," "got in their faces with the camera" (within six inches) and came "right up to their "name and shield number" as plaintiff attempted to video their badge numbers.  (Defendants' 56.1, ¶ 21)

Plaintiff contends that P.O. Benites "kept asking me to move back," but that plaintiff didn't comply with P.O. Benites' third request to move further back because she believed that she was "within the law." This is consistent with the officers' testimony that plaintiff remained right next to them despite their attempts to have move back to a safe distance from the interaction. (Defendants' 56.1, ¶ 22)

Plaintiff also testified at her deposition that if she moved back any further, it would have put her "without reach of being able to videotape the incident," so she did not. (Defendants' 56.1, ¶ 23)

Throughout the incident, plaintiff was "spewing out the numbers around the stop and frisk law and it's disproportionate targeting of Black and Latino youth" as she videotaped. (Defendants' 56.1, ¶ 24)

The mother of one of the males stopped who claims to have observed the incident testified that plaintiff was yelling throughout the incident, "Why are you stopping them? Why are you frisking them? Why are they being stopped?" The police officers conducting the stop testified to the same thing, that plaintiff was "screaming and yelling that we don't have a reason to be annoying these kids, stopping them or speaking to them." (Defendants' 56.1, ¶ 25)

Plaintiff admits to interacting with police officers in a tone "slightly above normal," though she denies screaming or yelling." One of the non-party witnesses, the mother of one of the males stopped, testified, however, that plaintiff was "talking really loud" and "yelling," while another testified that plaintiff was "excited" and her voice was "a little louder than normal…" and "raised." The police officers present testified that plaintiff was "screaming" "at the top of her lungs." (Defendants' 56.1, ¶ 26)

According to plaintiff's social media page on the night of the incident, "the neighbors were watching from their windows, at first. When **I interceded** [people] started to come out and get involved. **There was about to be a riot.**" (emphasis added) The police officers present observed approximately ten people coming out of their apartment buildings as well who began to also state the officers were "harassing" the boys. Just as plaintiff thought that there was about to be a "riot," the officers felt the crowd was "on the verge of becoming violent." P.O. Dumelle specifically got out of the police car that had arrived for back-up to "make sure that the outside groups did not interfere with what was going on." (Defendants' 56.1, ¶ 27)

Plaintiff contends that she was then "shoved" with three fingers by P.O. Benites on the right shoulder, causing her to have to take a "step and a half" back, which she admits would have been captured by the videotape if it had been preserved and for which she suffered no injury. One of the males stopped testified that it was a "touch." P.O. Benites testified at deposition that slight contact was made inadvertently because plaintiff was so close to the interaction. (Defendants' 56.1, ¶ 28)

According to plaintiff at her deposition, "people on the street started to "comment on [P.O. Benites] shoving [plaintiff]," as "[plaintiff] said that [she] couldn't believe that [P.O. Benites] just pushed [her]." (Defendants' 56.1, ¶ 29)

According to plaintiff, P.O. Benites then talked into her "walkie-talkie." In fact, P.O. Benites called for her supervisor over the radio. (Defendants' 56.1, ¶ 30)

A second police car then arrived with two police officers in it, defendant Sgt. Anthony Famighetti and non-party P.O. Adam Dumelle. (Defendants' 56.1, ¶ 31)

As plaintiff was arrested, according to plaintiff at her deposition, "the people on the side said, why are you guys arresting her." (Defendants' 56.1, ¶ 32)

Plaintiff was handcuffed, brought back to an NYPD precinct and released after spending 33 minutes in a holding cell upon the issuance of a summons for disorderly conduct. (New York Penal Code § 240.20(2). (Defendants' 56.1, ¶ 33)

The officers were unable to complete their work with respect to the stop of the males at the scene of the incident due to plaintiff's interference. (Defendants' 56.1, ¶ 34)

Plaintiff never saw P.O. Benites go through plaintiff's phone nor knows if P.O. Benites has ever seen the video, yet alleges in her complaint that P.O. Benites "searched the contents of her phone." P.O. Benites denies ever having seen plaintiff's video. (Defendants' 56.1, ¶ 35)

In an email of plaintiff produced in this litigation, plaintiff gave her motivation for her "interception" of the stop: "Our quest for justice sometimes puts us in situations where we simply cannot acquiesce….Sometimes I wish I didn't care so much…My life would certainly be easier...but I kept looking at those boys, I saw the humiliation in their eyes. And all I kept thinking was, my God anyone of those boys could have been my brother…God knows I wanted to turn a blind eye, but I simply could not. Something w/n me just wouldn't let me go on about my business." "…[M]y organizing and advocate spirit wouldn't allow it." (Defendants' 56.1, ¶ 36)

As of the day after the incident, plaintiff confirmed that the video was intact and contained footage from the beginning of her videotaping to her handcuffing. (Defendants' 56.1, ¶ 37)

However, plaintiff claims that she lost the video on her IPhone at a gala or in a taxi just two days after the incident, the first time she had lost a phone in 5-7 years, without ever preserving the video she took. (Defendants' 56.1, ¶ 38)

Plaintiff's own social media posting, on the night of the incident, following her posting about causing a "riot," states that "**I have to figure out how to make this summons disappear.**"  (emphasis added)(Defendants' 56.1, ¶ 39)

Another of plaintiff's own social media postings the day after the incident stated, "I know that I have a case."  (Defendants' 56.1, ¶ 40)

## ARGUMENT

### POINT I

**THERE WAS PROBABLE CAUSE TO SUMMONS PLAINTIFF FOR OBSTRUCTION OF GOVERNMENTAL ADMINISTRATION AND DISORDERLY CONDUCT**

Probable cause is a complete defense to an action for false arrest,  <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996), and defendants submit that there was indisputably clearly probable cause for the summons that was issued to plaintiff.[2]  "A court assessing probable cause must 'examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" <u>Marcavage v. City of New York</u>, 689 F.3d 98, 109 (2d Cir. 2012) (quoting <u>Maryland v. Pringle</u>, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003)). Additionally, should there be probable cause, an arrest is not unlawful by virtue of the fact that the arresting officer did not identify a particular charge supported by said probable cause at the time of the arrest.  <u>Jaegly v. Couch</u>, 439 F.3d 149, 154 (2d Cir. 2006).

**A.    Obstruction of Governmental Administration**

There was clearly probable cause for plaintiff's arrest based on the charge of obstruction of governmental administration, New York Penal Code §195.05.  Under New York

---

[2] Similarly, probable cause is also a complete defense to an action for malicious prosecution.  <u>Kinzer v. Jackson</u>, 316 F.3d 139, 143 (2d Cir. 2003).

law, obstructing governmental administration has four elements: "1) prevention or attempt to prevent 2) a public servant from performing 3) an official function 4) by means of intimidation, force or interference." Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995). The foregoing penal law prohibits "an intentional insertion of one's self or one's intentions into steps taken by police officers to fulfill their duties." People v. Beam, 866 N.Y.S.2d 564, 567 (N.Y. Sup. Ct. 2008). "Under New York law, merely approaching the police, or speaking during the course of a police action or disregarding police instructions, will support a conviction for OGA." Rasmussen v. City of New York, 766 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (quoting Husbands ex. rel. Forde v. City of New York, 05 Civ. 9252, 2007 U.S. Dist. LEXIS 61042, at *43-44 (S.D.N.Y. April 16, 2007)) (citing Decker v. Campus, 981 F. Supp. 851, 858 (S.D.N.Y. 1997) and People v. Tarver, 188 A.D.2d 938 (3rd Dep't 1992)). Obstruction of administration of governmental administration still lies even where in the view of the arrested, he/she attempted to assist or alleviate a situation which he/she believed required his/her intervention. Id.

Obstruction of Governmental Administration may be predicated on "a defendant's refusal to obey orders to leave a premises,…to 'step back' from an accident scene or to keep away from an area where a disturbance is taking place." Wilder v. Village of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003); see also Decker, supra, 981 F. Supp. 851 at 858 (probable cause existed where plaintiff disobeyed orders to step back from scene of car accident involving his wife); People v. Romeo, 9 A.D.3d 744, 779 N.Y.S.2d 860, 861-62 (App. Div. 2004) (probable cause where individual disobeyed orders to stay away while police attempted to transfer his arrested girlfriend from one police car to another); Marcavage, supra, 689 F.3d at 109-10 (probable cause where demonstrators defied 17 directives to leave "no-demonstration zone"); Berger v. Schmitt, 91 F. App'x 189, 191 (2d Cir. 2004) (upholding finding of probable

cause where plaintiff returned to premises after police ordered him to depart in their efforts "to contain what had only recently been a volatile situation");  Linehan v. State, 201 A.D.2d 706, 608 N.Y.S.2d 294 (App. Div. 1994) (probable cause where plaintiff "resisted the efforts of a court officer to keep her away from the area where a disturbance was taking place").

      **1.**        **Official Function**

The official function that the defendants P.O.s Williams and Benites were performing at the time of the incident was an approach and stop of three males.  (Defendants' 56.1, ¶ 1)   The approach and stop were based on a grand larceny/robbery pattern that was occurring in the neighborhood in which the perpetrator(s) threatened the use of violence, stole electronics and fled on bicycle(s).  The males stopped fit the description of the perpetrators of the aforementioned crime pattern.  One of the males stopped had a suspicious bulge in his pocket and in the opinion of the officers' was moving suspiciously as the officers approached. (Defendants' 56.1, ¶ 1)

A police officer may conduct this type of limited investigatory stop of a person where the officer has "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'"   Terry v. Ohio, 392 U.S. 1, 30 (1968).   "While…the Fourth Amendment requires at least a minimal level of justification for making the stop," Illinois v. Wardlow, 528 U.S. 119, 123 (2000), the amount of suspicion necessary to justify the encounter is less than a "fair probability" of wrongdoing and "considerably less than proof by a preponderance of the evidence."  United States v. Sokolow, 490 U.S. 1, 7 (1989).  "In such cases, the court should not indulge in unrealistic second-guessing."  United States v. Sharpe, 470 U.S. 675, 686 (1985).

While the officer may not rely on an "inchoate and unparticularized suspicion or hunch," officers are entitled to "draw on [their] own experience and specialized training to make inferences from and deductions about the cumulative information available to [them] that might

well elude an untrained person." United States v. Muhammad, 463 F.3d 115, 121 (2d Cir. 2006). Therefore, courts evaluate the circumstances surrounding the stop "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000) (internal citation and quotation marks omitted). Further, a police officer making an investigatory stop "should not be denied the opportunity to protect himself from attack by a hostile suspect." Adams v. Williams, 407 U.S. 143, 146 (1972).

Any attempt by plaintiff to defeat probable cause for obstruction of governmental administration by arguing that the officers' acts that she interfered with lacked legitimacy is nothing more than an attack on the credibility of the officers that is not sufficient to defeat summary judgment. See Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). As such, this element of a violation of obstruction of governmental administration is clearly met.

### 2. Interference with the Defendants' Duties

Judge Ross' recent decision in Petway v. City of New York, 12 Civ. 279 (ARR)(LB), 2014 U.S. Dist. LEXIS 28361 (E.D.N.Y. Mar. 4, 2014), is instructive on the interference issue as it dealt with similar issues to those presented in Charles. In Petway, the plaintiff therein brought §1983 claims arising out of his October 17, 2010 arrest. The incident began when the police were called to the scene of an incident in which an individual threatened to get a knife and stab plaintiff's ex-wife. While plaintiff's ex-wife talked to the police officers outside his residence, plaintiff thought he heard the officers laughing at her from inside the residence and came outside. He proceeded to ask who was in charge and wrote down the officers' names before going back inside the house. His ex-wife then began to chase a man and his daughter down the street as a result of a spitting incident a few days earlier. The police van caught up to plaintiff's ex-wife, arrested and handcuffed her. Id. at *2-6.

When Petway heard the commotion, he came back outside, walked down the street and saw his ex-wife in handcuffs and under arrest. Plaintiff asked the officers who his ex-wife's arresting officer was. Petway admitted that he came to within "at least 3-4 feet away" of his arrested ex-wife and then within "a couple of feet" of her when he went to pick up a pen that she had dropped. Plaintiff also claimed that the officers then shoved him, though he suffered no injuries. The officers in <u>Petway</u> testified that Petway blocked his ex-wife from being placed into the police van, refused orders to move back and was "disorderly, making a scene in public." Petway disputed the officers' accounts of the incident. After a slight physical altercation with the police, Petway was arrested and charged with obstruction of governmental administration and disorderly conduct. Plaintiff accepted an adjournment in contemplation of dismissal in satisfaction of the foregoing criminal charges. <u>Id</u>. at *6-10.

Defendants moved for summary judgment on Petway's complaint and raised probable cause as a complete defense to Petway's false arrest claim. The defendants therein argued that there was probable cause for Petway's arrest for obstruction of governmental administration and Judge Ross granted defendants' motion for summary judgment on that basis. The court reasoned that plaintiff's admission that he was "at least three or four feet" away from the police interaction was too close to the incident, and the fact that he wasn't "inches" away was "a semantic rather than a substantive dispute." The Court further reasoned that "in a situation where plaintiff admits that there was a 'commotion' and a crowd of 'better than twenty' people, a reasonable officer would not be unwarranted in the conclusion that a distance of at least 'three or four feet' was 'close' enough to the arrestee to pose a threat to the officers' containment of the situation. This is particularly the case given that the police officers perceived plaintiff to disobey multiple orders to 'step back' from near Edwards [his ex-wife]." "What matters for purposes of

probable cause is whether, based on his perception of events, a reasonable officer on the scene would be justified in his belief that plaintiff was committing OGA." Id. at *17-25.

As in Petway, even taking the plaintiff Charles' admissions herein at face value, it is undisputed that she interfered in a physical manner with the defendant officers' investigatory stop by virtue of, to use her own words, her "interced[ing]" in the incident and by causing "there [to] about to be a riot." (Defendants' 56.1, ¶ 27) Charles' unlawful interference with the officers' stop herein can be categorized in three distinct ways. First, as Judge Ross found in Petway, the defendant officers were not unwarranted in their assessment that Charles was simply too close to the stop that they were conducting, "to pose a threat to the officers' containment of the situation" and their safety. Plaintiff admits that she got within five feet of the police interaction (defendants' 56.1, ¶ 10), which not surprisingly is further from the interaction than every non-party witness and the defendant officers who testified in depositions. (See Defendants' 56.1, ¶ 21) Even if Charles' testimony is credited, just as Judge Ross found that Petway's being "at least three or four feet away" was too close, this Court should find as a matter of law that five feet away was too close in this case, especially in light of plaintiff's own admission that "that there was about to be a riot" as a result of her "interceding" in the underlying police interaction. (Defendants' 56.1, ¶ 27)

Second, plaintiff herself admits that when she was approximately six feet away from the police interaction that she did not comply with one of the officer's orders to move back to a safe distance for the reason that she "was within the law." (Defendants' 56.1, ¶ 22) Plaintiff's own admission places her exactly within the numerous cases set forth above wherein probable cause for obstruction of governmental administration was found where the arrestee failed to comply with a police order to move back from the subject police interaction. Charles

was simply too close to the underlying police interaction, and this created a dangerous situation for the officers in terms of safety and containment.  This in and of itself is sufficient for the Court to find as a matter of law that plaintiff interfered with the officers' work by refusing to comply with an order to move back to a safe distance from the police interaction.  Wilder, supra.

Third, similar to what was found by Judge Cogan in Rasmussen, supra, plaintiff's approach to the underlying police interaction, and obvious attempt to interfere with it by talking loudly, "spewing out the numbers around the stop and frisk law and it's disproportionate targeting of Black and Latino youth" (defendants' 56.1, ¶ 24) and videotaping from too close a distance away (defendants' 56.1, ¶ 21), is also sufficient for the Court to find as a matter of law that there was probable cause for plaintiff's arrest for obstruction of governmental administration.

**B.    Disorderly Conduct**

There was also probable cause for plaintiff being issued a summons based on her violation of New York's disorderly conduct statute, which does not have OGA's "official function" requirement.  Cameron v. City of New York, 598 F.3d 50, 69 (2d Cir. 2010).   In pertinent part, New York Penal Law §240.20 states that "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:…2) [sh]e makes unreasonable noise; or…6) [sh]e congregates with other persons in a public place and refuses to comply with a lawful order to disperse…."  "[T]he gravamen of disorderly conduct is conduct that provokes, or risks provoking, a 'breach of the peace'…or a 'public disturbance.'"  People v. Jackson, 2007 N.Y. Misc. LEXIS 8264, at * 5 (Crim. Ct. N.Y. Cty) (quoting People v. Munafo, 50 N.Y. 2d 326, 331 (1980) and People v. Bakolas, 59 N.Y. 2d 51, 54 (1983)).

**1.    Unreasonable Noise**

Under subsection (2) of Penal Code §240.20, "unreasonable noise" is defined as "a noise of a type or volume that a reasonable person, under the circumstances, would not tolerate." Toback v. City of Long Beach, 948 F. Supp. 167 (E.D.N.Y. 1996) (quoting People v. Bakolas, supra, at 53). Courts have found this subsection to have been violated in circumstances such as where a person causes a "commotion" by "yelling and screaming" in the security area of a courthouse. Adonis v. Court Officer Coleman, 08 CV 1726 (MGC), 2009 U.S. Dist. LEXIS 87389, at *8, 20-21 (S.D.N.Y. Sept. 23, 2009). All of the he undisputed facts in defendants' 56.1 establish that plaintiff's acts caused a similar "commotion" in this case that arises to probable cause for the summons issued to her under this subsection of the disorderly conduct statute. Plaintiff's own admissions that she approached within five feet of the underlying police interaction while speaking in an above normal tone of voice (defendants' 56.1, ¶¶ 10 and 26), was "spewing out the numbers around the stop and frisk law and it's disproportionate targeting of Black and Latino youth" from within feet of the underlying police interaction (defendants' 56.1, ¶ 24), that "there was about to be a riot" as a result of her "interceding" in the police interaction (defendants' 56.1, ¶ 27) and that she refused on order of the officers to move further away from the incident while undertaking the undisputed conduct outlined in defendants' 56.1 statement all support probable cause for plaintiff being summonsed under this subsection of the disorderly conduct statute. The Court should thus find as a matter of law that plaintiff's own admissions of what she did amounted to a "commotion," and hence probable cause for her being summonsed for disorderly conduct under New York Penal Law §240.20(2).

### 2. Refusal to Comply with the Officers' Orders

Under subsection (6) of §240.20, "a person is [also] guilty of committing disorderly conduct if he refuses to obey an officer's order to move, unless the order was 'purely' arbitrary and 'not calculated in any way to promote the pubic order." Crenshaw v. City of

<u>Mount Vernon</u>, 372 Fed. Appx. 202 (2d Cir. 2010). As seen, plaintiff admitted to refusing to comply with a non-arbitrary order to move back to a safe distance from the incident. (Defendants' 56.1 at ¶ 22) Defendants respectfully submit that the question of whether plaintiff's undisputed failure to comply with the defendant officers' order to move back from the police interaction was arbitrary is one of law, not fact. In light of the facts that the defendant officers carried weapons, were interacting with young males that they didn't know, that at least one of the males stopped had a suspicious bulge and was moving suspiciously (defendants' 56.1 at ¶ 1), and that plaintiff has admitted that there was about to be a "riot" as a result of her "interceding" in the police interaction (defendants' 56.1, ¶ 27), there can be no reasonable argument that plaintiff can make that the officers' order to move further back from the interaction, and to which she admittedly did not comply with, was arbitrary. There was thus probable cause for plaintiff's being issued a summons based on a violation of this subsection of the disorderly conduct statute as well.

## POINT II

### PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM MUST FAIL

Plaintiff also claims First Amendment retaliation, the elements of which are at a minimum 1) that the plaintiff had an interest protected by the First Amendment; and 2) that defendants' actions were motivated by or substantially caused by the exercise of that right. <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 73 (2d Cir. 2001). No such retaliation claim based on an arrest and/or criminal prosecution is available where the arrest/prosecution at issue was supported by probable cause. <u>Mozzochi v. Borden</u>, 959 F.2d 1174, 1179-80 (2d Cir. 1992). "Specific proof of improper motivation is required in order for plaintiff to survive summary

judgment on a First Amendment retaliation claim." Bryant v. City of New York, 99 CV 11237 (LMM), 2003 U.S. Dist. Lexis 21642, at *40 (S.D.N.Y. Dec. 1, 2003).

Plaintiff cannot establish either element of this claim since she was interfering with a legitimate law enforcement activity, there was probable cause for the issuance of the summons to her and she can offer no specific proof of an improper motive on the part of any of the defendant officers. To the contrary, even taking plaintiff's version of events at face value, the officers' acts demonstrate an indisputable attempt to alleviate an unsafe situation and to conduct their work without undue interference. There is simply not any evidence of a retaliation which would be necessary to survive defendants' motion for summary judgment.

## POINT III

### THE DEFENDANT OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity is an "*immunity from suit* rather than the mere defense to liability and is effectively lost if the case is erroneously permitted to go to trial." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original). The doctrine is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell, 472 U.S. at 526). Accordingly, qualified immunity questions should be resolved "at the earliest possible stage of litigation" to satisfy the goal of the doctrine. Pearson, 129 S. Ct. at 815 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)). The United States Supreme Court has "made clear that the 'driving force' behind the creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against governmental officials will be resolved before discovery." Pearson, 129 S. Ct. at 815 (quoting Anderson v. Creighton, 483 U.S. 635, 640, n. 2 (1987)).

The question of qualified immunity is independent of the merits of the underlying action and must be examined independent of the underlying claims.  Saucier, 533 U.S. at 204; Washington Square Post No. 1212 v. Maduro, 907 F.2d 1288, 1292 (2d Cir. 1990) (citing Mitchell, 472 U.S. at 527-28)).  In fact, the Supreme Court emphasized in Saucier that "to deny summary judgment [on qualified immunity grounds] any time a material issue of fact remains on the…[underlying] claim…could undermine the goal of qualified immunity."  Saucier, 533 U.S. at 202.  The application of qualified immunity is important since it is inevitable that "officials will, in some cases, reasonably but mistakenly …[take actions that are later found to be illegal and,] in such cases those officials…who act in ways they reasonably believe to be lawful -- should not be held personally liable."  Anderson v. Creighton, 483 U.S. 635, 641 (1987); see also Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, 513 U.S. 1076 (1995) (qualified immunity available to officer "when he reasonably believes that a reasonably prudent police officer would have acted even though a reasonably prudent police officer would not have acted.").

The purpose of qualified immunity is to protect government employees from civil liability where performance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."  Pearson, 129 S. Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1992).  It is well settled that governmental officials performing discretionary functions are shielded from liability when their conduct does not violate an individual's clearly established constitutional or statutory rights. Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir. 1990), cert. denied, 498 U.S. 967 (1990).  Where reasonably competent officials could disagree as to whether the conduct at issue would violate

clearly established rights, the immunity defense is available as well.  <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986);  <u>Cartier v. Lussier</u>, 955 F.2d 841, 846 (2d Cir. 1992).

For plaintiff to defeat the defense of qualified immunity, she must show that defendant violated a constitutional right and establish that the right was "clearly established" at the time of defendant's alleged misconduct.  <u>Pearson</u>, 129 S. Ct. at 815-816.  Put another way, qualified immunity is appropriate "if either a) the defendant's action did not violate clearly established law, or b) it was objectively reasonable for the defendant to believe that his action did not violate [the] law."  <u>Anderson v. Recore</u>, 317 F.3d 194, 197 (2d Cir. 2003).  In light of <u>Pearson</u>, the District Court is no longer bound to determine the existence of a constitutional right first before considering whether the right was clearly established at the time of the governmental official's conduct.  <u>Pearson</u>, 129 S. Ct. at 818.

"A right is clearly established if 1) the law is defined with reasonable clarity, 2) the Supreme Court or the Second Circuit has recognized the right, and 3) a 'reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'"  <u>Anderson</u>, 317 F.3d at 197 (quoting <u>Young v. County of Fulton</u>, 160 F.3d 899, 903 (2d Cir. 1998)).  The <u>Saucier</u> Court stated that the right the official is alleged to have violated must have been "clearly established in a more particularized, and hence more relevant, sense."  <u>Id</u>. at 202.  That is, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Anderson</u>, 483 U.S. at 640.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [governmental official] that his conduct was unlawful in the situation he confronted."  <u>Saucier</u>, 533 U.S. at 202.

Thus, "[u]nder the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." Adonis, at *15-17 (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987). "If officers of reasonable competence could disagree as to whether probable cause existed, 'immunity should be recognized.'" Adonis, at *17 (quoting Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007)). This standard has been recognized as "arguable probable cause." Id. Even if the "official function" requirement for obstruction of governmental administration is not technically met, qualified immunity may still lie under the "arguable probable cause" standard. O'Donnell v. Police Officer Card, 11 Civ. 3297 (ER), 2013 U.S. Dist. LEXIS 106609, at *22 (S.D.N.Y. July 26, 2013).

At worst for the defendant officers, probable cause for plaintiff's arrest was "arguable," thus qualified immunity should be afforded in this case. First, plaintiff cannot point to any applicable law that was "clearly established" that the defendant officers violated at the time plaintiff was summonsed. To the contrary, Judge Ross' Petway decision in March, 2014 under similar facts to those presented here demonstrates that the state of law clearly supports the defendant officers' decision to summons plaintiff for her interference with the stop that P.O.s Williams and Benites were conducting.

Second, as seen, it was reasonable for the defendant officers to believe that there was probable cause for the issuance of the summons to plaintiff based on her own admissions that she approached within five feet of the underlying police interaction while speaking in an above normal tone of voice (defendants' 56.1, ¶¶ 10 and 26), was "spewing out the numbers

around the stop and frisk law and it's disproportionate targeting of Black and Latino youth" from within feet of the underlying police interaction (defendants' 56.1, ¶ 24), that "there was about to be a riot, " as a result of her "interceding" in the police interaction (defendants' 56.1, ¶ 27) and that she refused on order of the officers to move further away from the incident while videotaping and undertaking the other undisputed conduct outlined in defendants' 56.1 statement. Simply, qualified immunity should be afforded to the defendant officers based on the conduct to which plaintiff admits.

There is also a separate basis for qualified immunity that applies to plaintiff's First Amendment retaliation claim. As plaintiff contends that the protected First Amendment activity that she was engaged in was the videotaping of the underlying stop, neither the United States Supreme Court nor the Second Circuit Court of Appeals had ruled that plaintiff had a protected First Amendment right to film as of the date of this incident. As such, the defendant officers could not have violated a "clearly established" right of plaintiff. Ortiz v. City of New York, 11 Civ. 7919 (JMF), 2013 U.S. Dist. LEXIS 136897, at *8-11 (S.D.N.Y. Sept. 24, 2013).

## POINT IV

### ALTERNATIVELY, SPOLIATION SANCTIONS ARE APPROPRIATE FOR PLAINTIFF'S DESTRUCTION OF HER VIDEO OF THE INCIDENT

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 457 (2d Cir. 2007). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Limited v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2000). As the

Second Circuit Court of Appeals has observed, "spoliators should not benefit from their wrongdoing…." <u>West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d 776, 779 (2d Cir. 1999).

A "district court has broad discretion in crafting a proper sanction for spoliation…[and] the appropriate sanction should be crafted to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine," <u>West</u> 167 F.3d at 779, and "should be assessed on a case by case basis." <u>Fujitsu Limited</u>, 247 F.3d at 436. The Second Circuit Court of Appeals has recognized that a sanction should "1) deter parties from engaging in spoliation; 2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and 3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." <u>West</u>, 167 F.3d at 779.

"A party seeking sanctions based on spoliation of evidence must prove the following: 1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; 2) that the records were destroyed with a culpable state of mind; and 3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2002). A party has acted with a sufficiently culpable state of mind when "evidence was destroyed knowingly, even without intent to breach a duty to preserve it, or negligently." <u>Id.</u> at 108; <u>see also</u> <u>Reilly v. Natwest Mkts. Grp. Inc.</u>, 181 F.3d 253, 267 (2d Cir. 1999) (failure to preserve evidence can fall "along a continuum of fault—ranging from innocence through degrees of negligence to intentionality").

"Outright dismissal of a lawsuit…is within the court's discretion." <u>West</u>, 167 F.3d at 779 (quoting <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45 (1991)). "Dismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned

party." Id. (internal cites omitted) "However, because dismissal is a 'drastic remedy,' it 'should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions.'" Id. (quoting John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988)).

Here, as of the day after the incident, plaintiff confirmed that the video that she took of the incident while it was unfolding was intact and contained footage from the beginning of her videotaping to her handcuffing. (Defendants' 56.1, ¶ 37) It cannot be seriously disputed that plaintiff had the duty to preserve the video. Plaintiff disagreed with her arrest and the summons that was issued to her on the date of the incident and her own social media postings indicated she was clearly going to challenge it. Her own social media posting on the night of the incident stated that, "**I have to figure out how to make this summons disappear,**" (emphasis added)(defendants' 56.1, ¶ 39) and the next day, "I know that I have a case…" (Defendants' 56.1, ¶ 40) There was thus no doubt immediately following the incident, that she disagreed with the summons that had been issued to her and that this lawsuit was at least under plaintiff's consideration. Therefore, her obligation to preserve the video attached at that time. E.g., Matteo v. Kohl's Department Stores, Inc., 09 CV 7830 (RJS), 2012 U.S. Dist. LEXIS 32193 (S.D.N.Y. Mar. 6, 2012).

Plaintiff contends that she lost her phone days after the incident when she attended an evening work event and either left the phone in a taxi or at the event, without ever preserving the video she took. (Defendants' 56.1, ¶ 38) Seemingly, at the very least, plaintiff admits that she lost her phone negligently, which as seen is a culpable state of mind for spoliation sanctions to attach. However, defendants respectfully submit that a much higher culpable state of mind should be imposed on plaintiff for the destruction of the video. As seen,

her own social media posting, following her posting about causing a "riot," states that "**I have to figure out how to make this summons disappear.**" (emphasis added)(Defendants' 56.1, ¶ 39) Defendants contend that the destruction of the best evidence of what occurred that early evening was destroyed by plaintiff because it was the best evidence of what she did unlawfully. This is supported by the facts that plaintiff admitted at her deposition that she hadn't lost a phone in five-seven years, yet lost her phone with the video on it just two days after the incident, as well as the fact that she made no efforts to preserve the video before the phone was supposedly lost.

There also can be no dispute that the video would have been the best evidence for a resolution of any factual dispute that the Court may believe exists in this case as a result of plaintiff's deposition testimony. As seen from defendants' 56.1 Statement at ¶¶ 21, 22, 24, 25, 26, 27, 28, 32 and 34, defendants contend that the video would have shown plaintiff's clear interference with the lawful stop, including the exact distance that plaintiff was from the officers as she carried on and videotaped in the officers' faces. It would also have shown how loud plaintiff was yelling and what was said, another factual dispute that plaintiff has attempted to create. What is left should this case proceed to trial, without the video, is a "he said/she said" dispute between plaintiff and the officers, with a few of plaintiff's neighbors who purportedly observed the incident giving testimony as well. Simply, this isn't fair to the defendant officers. Defendants deserved the opportunity to have the trier of fact see and hear exactly what occurred, which would have occurred but for plaintiff's destruction of the video. The prejudice to defendants is unspeakable and the Court should not tolerate it.

The sanction that defendants seek is dismissal of plaintiff's lawsuit. Although defendants recognize that this is "drastic" remedy, it is the only fair sanction in this instance. The video was the best evidence of what occurred during the incident and would have resolved

any factual dispute that plaintiff has attempted to create and that the Court may believe exists. Without it, defendants are left with "he said, she said" type evidence, which is not fair to them. It was the evidence on which this entire case turned. Simply, there was no adequate reason why this evidence was not preserved, all to defendants' prejudice. See Koch v. Greenberg, 07 CV 9600 (BSJ)(DF), 2011 U.S. Dist. LEXIS 114811 (S.D.N.Y. Aug. 16, 2011) (quoting 7 Moore's Federal Practice § 37.121 (2011) (Dismissal appropriate where "destroyed evidence is central to the disposition of an issue, claim, or defense, on which the outcome of the entire litigation turns.")

In the alternative, defendants seek an adverse inference instruction in accordance with the Second Circuit's decision in Residential Funding Corp., supra.

To the extent that the Court finds facts in dispute that require resolution for a determination of defendants' motion for spoliation sanctions, defendants respectfully request that a spoliation sanctions hearing be conducted so that findings of fact may be made.

## CONCLUSION

For the foregoing reasons, plaintiff's amended complaint against the defendants Williams, Benites and Famighetti should be dismissed with prejudice, or alternatively, if the spoliation sanction of dismissal is imposed, the dismissal of plaintiff's entire complaint.

Dated:      New York, New York
             July 18, 2014

                        ZACHARY W. CARTER
                         Corporation Counsel of
                         the City of New York
                        *Attorney for Defendants Pamela Benites,*
                         *Anthony Famighetti and Raymond*
                         *Williams*
                         100 Church Street
                         New York, New York 10007
                         (212) 356-3519

By: _____/s/_____

Mark D. Zuckerman
Senior Counsel