
125 Broad Street
New York, NY 10004
212.607.3300
212.607.3318
www.nyclu.org

Alexis Karteron
Senior Staff Attorney
Direct Line: 212.607.3391
akarteron@nyclu.org

October 23, 2014

**VIA ECF**
Honorable Steven M. Gold
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Charles v. City of New York*, *et al.*, No. 12 civ. 6180 (SLT) (SMG)

Dear Chief Magistrate Judge Gold:

On behalf of the plaintiff, who alleges that she was arrested in retaliation for her protest and filming of the stop-and-frisk of three youths on her block in violation of the First and Fourth Amendments as well as state law, I write to identify the issues the plaintiff would like to discuss at the status conference scheduled for Tuesday, October 28, 2014. The parties have made very limited progress on *Monell* discovery since it opened in July. Thus far, the defendants have provided inadequate responses to the plaintiff's discovery demands concerning policies and training materials, and have refused to discuss substantively the plaintiff's proposed requests regarding a question critical to the plaintiff's *Monell* theory: whether the City was on notice of other instances in which NYPD officers violated the right to record police activity. The Court's guidance on these discovery issues is therefore necessary at this point.

**Background**

At the July 7 status conference, counsel for the parties and the Court discussed the scope of discovery concerning the plaintiff's *Monell* theory of liability, *i.e.*, that her arrest resulted from the City's deliberate indifference to violations of the First Amendment right to record police activity. I informed the Court that the plaintiff sought to pursue discovery in three areas: (1) the NYPD's policies concerning the right to record police activity; (2) training about such policies; and (3) other instances in which the NYPD has violated the right to record police activity. The Court allowed the plaintiff to propound written discovery requests as to only the first two subjects. The Court adopted this limitation with the aim of allowing the defendants to consider whether they might claim that although NYPD officers have a history of retaliating against people for recording police activity, the NYPD's training and supervisory programs are sufficient to combat the problem. The Court suggested that if the defendants were to take this approach, discovery concerning other instances in which the NYPD has violated the right to record police activity would be unnecessary. The defendants later decided not to adopt this approach.
The New York Affiliate of the American Civil Liberties Union | Jonathan Horn, President | Donna Lieberman, Executive Director

**Discovery on Policies and Training Materials**

On July 11, the plaintiff served discovery demands concerning the NYPD's policies and training materials. Nearly two months later, the defendants served their responses and objections and produced just four documents.[1] Those documents include one section of the NYPD Patrol Guide and three excerpts of the Police Student's Guide, which is used to train cadets at the Police Academy.

On September 11, 2014, I conferred by telephone with Mr. Zuckerman, counsel for the defendants, about the defendants' responses and objections. The next day, I sent a letter to Mr. Zuckerman describing the plaintiff's objections to the defendants' responses in greater detail. (Attached here as Exhibit 2). On October 14, we again conferred, and Mr. Zuckerman indicated that he had requested some additional documents from his client, but would not identify with specificity the documents that the defendants intended to produce. He further indicated that he expected to produce additional documents in about 10 days, *i.e.*, around October 24.

Given that great uncertainty remains about the scope of the defendants' production on policies and training materials, only the chief disputes that the plaintiff expects to remain by the time of the October 28 conference are described below. They include: (1) the plaintiff's need for training materials in addition to those used by the individual defendants; (2) the plaintiff's need for documents sufficient to understand the context in which the relevant training was provided; and (3) the defendants' refusal to answer the plaintiff's interrogatories, which seek basic information about the NYPD's policies and training programs.

*First*, the plaintiff strongly objects to the defendants' plan to produce only those training materials that the individual defendants used because it simply will leave her unable to prove her *Monell* theory. The plaintiff alleges that the City is liable for the violation of her constitutional right to record police activity under *Monell* because it has been deliberately indifferent to such violations and failed to provide adequate training to police officers on the issue. To this end, the plaintiff seeks to establish that the City was aware of numerous instances of similar misconduct, but did not take appropriate steps to remedy the problem. *See Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) ("A municipal policy may be pronounced or tacit and reflected in either action or inaction."); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) ("[A] municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training.").

The defendants' plan to produce only documents that the individual defendants encountered cannot possibly allow the plaintiff to uncover evidence sufficient to demonstrate that the City was deliberately indifferent to the constitutional violations like those suffered by Ms. Charles. If, for example, a review of NYPD training materials revealed that the City continuously relied on the same single paragraph to address the right to record police activity—even though the City was on notice that officers frequently arrested bystanders who recorded police activity—the plaintiff would have powerful evidence of deliberate indifference.[2] The plaintiff has therefore requested relevant training materials for the period of January 1, 2004

---

[1] The responses and objections and the training materials produced by the defendants are attached as Exhibit 1.

[2] That single paragraph appears on the page bearing Bates Stamp No. D499, and is part of Exhibit 1.

forward, and objects to the defendants' claim that only the training materials used by individual defendants are relevant.

*Second*, the plaintiff objects to the scope of the production of training materials the defendants have made because it does not allow the plaintiff to evaluate the context in which the materials were used. The plaintiff does not seek the entire Police Student's Guide, but does seek the relevant sections in full. For example, the context in which the single paragraph on the right to record police activity appears may be probative of the sufficiency of that material.

*Third*, the plaintiff seeks substantive responses to her interrogatories. The interrogatories seek basic information about the training programs that address the right to record police activity and the defendants have not answered them except to refer, in some cases, to the documents produced thus far.

In sum, the defendants' responses to the plaintiff's discovery demands regarding policies and training materials are woefully inadequate. The plaintiff therefore seeks the Court's guidance on how to proceed with these requests.

**Discovery concerning Notice to the City**

During the September 11 conferral, the parties agreed to attempt to confer about the third remaining area of *Monell* discovery, *i.e.*, notice to the City of the problem of officers violating the right to record police activity, in the first instance. To that end, I provided Mr. Zuckerman with the plaintiff's proposed additional document requests. (Attached as Exhibit 3.)

The proposed requests were devised with the intent of determining whether the City has been on notice of other violations of the right to record police activity. Specifically, the plaintiff seeks to identify other instances in which NYPD officers have violated the right to record police activity, including but not limited to 26 specific instances of which the plaintiff is aware, and the NYPD's response--or lack thereof--to those incidents. These are the basic requirements for an assertion of deliberate indifference under *Monell*. *See Jones v. Town of E. Haven*, 692 F.2d 72, 81 (2d Cir. 2012) ("To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights."); *Cash*, 654 F.3d at 336 (noting that a "pattern" is "ordinarily necessary to prove deliberate indifference in the context of a failure-to-train claim").

On October 21, Mr. Zuckerman informed me that the defendants objected wholesale the plaintiff's proposed document requests. He asserted that they were inappropriate because this case is not a class action and would not discuss his substantive objections to any particular request. Because the proposed requests seek the information necessary to the plaintiff's pursuit of *Monell* liability, the plaintiff submits that they are reasonable. The plaintiff therefore seeks the Court's permission to serve them on the defendants.

We thank the Court for its consideration of this matter.

Respectfully submitted,

Alexis Karteron
Jordan Wells


c: Mark Zuckerman, Esq. (via ECF)
Counsel for Defendants