

125 Broad Street
New York, NY  10004
212.607.3300
www.nyclu.org

Alexis Karteron
Senior Staff Attorney
akarteron@nyclu.org
212-607-3391

December 19, 2014

**VIA ECF**
Honorable Steven M. Gold
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: *Charles v. City of New York, et al.*, No. 12 civ. 6180 (SLT) (SMG)

Dear Chief Magistrate Judge Gold:

      On behalf of the plaintiff, who alleges that she was arrested in retaliation for her protest and filming of the stop-and-frisk of three youths on her block in violation of the First and Fourth Amendments as well as state law, I write to identify the issues that are ripe for discussion at the status conference scheduled for Tuesday, December 23, 2014.  The primary issue to be resolved at this juncture is whether the plaintiff should be permitted to complete reasonable discovery on the question of whether the City received notice of a pattern of violations of the constitutional right to record police activity—crucial evidence that the City demonstrated deliberate indifference by failing to address this problem through training.  The opportunity to complete such discovery may well be dispositive of the plaintiff's *Monell* claim.  Both this issue and the few remaining disputes about pending discovery requests are discussed below.

**Background**

      The Court has permitted the plaintiff to propound requests concerning the NYPD's policies and training programs that touch upon the right to record police activity.  Thus far, the defendants have produced relevant sections of the Police Student's Guide, which is used to train NYPD recruits, from 2003 forward.  They have also confirmed that the NYPD does not conduct any in-service training on the right to film police activity.  This discovery appears to reveal that the NYPD has used the same training materials on the right to film police activity—two paragraphs in the Police Student's Guide—for at least a decade.

      This record of inaction supports the plaintiff's deliberate indifference theory.  *See Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) ("Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability." (internal quotation marks omitted)); *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("To establish deliberate indifference, a plaintiff must establish that a policymaking official was aware of constitutional injury, or the

risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights."). But in addition to this record of deficient training, to prove her claim the plaintiff must demonstrate that the need for better training was evident to City policymakers—a showing that typically depends on a pattern of similar constitutional violations. *See Connick*, 131 S. Ct. at 1360 (noting that a showing of similar constitutional violations is "ordinarily necessary" to prove a failure-to-train claim); *Cash v. County of Erie*, 654 F.3d 324, 336 (2d Cir. 2011) (same).

**Discovery Concerning A Pattern of Similar Constitutional Violations**

Given that a plaintiff ordinarily needs to demonstrate a pattern of similar constitutional violations to prevail on a failure-to-train claim, the plaintiff here now requests permission to conduct reasonable discovery on this issue. The plaintiff is aware of 26 alleged violations of the right to record police activity in recent years, but it is highly likely that many more exist. The CCRB, which is currently conducting a study of this issue, has recently reported that it received 42 complaints regarding civilians recording police activity in a recent six-month period.[1]

The opportunity to conduct such discovery is critical to the plaintiff's ability to prove her *Monell* claim. The failure to demonstrate a pattern of similar incidents has often proven fatal in analogous cases. *See, e.g.*, *Jones*, 691 F.3d at 82-86 (vacating jury verdict in plaintiff's favor where evidence of six incidents the plaintiff argued were similar to the constitutional violations at issue was insufficient to establish *Monell* liability); *Green v. City of New York*, 465 F.3d 65, 82 (2d Cir. 2006) (granting summary judgment to City on failure-to-train claim because "despite the likelihood of a significant problem, there is no admissible evidence in the record of any problem"). In contrast, courts have found that a reasonable jury could conclude that a municipality received notice of a pattern of misconduct through complaints alleging similar constitutional violations. *See, e.g.*, *Davis v. City of New York*, 959 F. Supp. 2d 324, 356-57 (S.D.N.Y. 2013) (denying City's summary judgment motion where plaintiffs presented evidence that the City received notice of a pattern of unconstitutional trespass stops and arrests in public housing through, *inter alia*, individual CCRB reports); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 479 (E.D.N.Y. 2002) (denying municipality's summary judgment motion where plaintiff presented evidence of numerous complaints of misconduct).

The parties and the Court discussed discovery regarding notice to the City of similar constitutional violations during the October 28 status conference. As an initial step, the Court ordered the defendants to determine how records concerning complaints of interference with the right to record police activity are organized, with the aim of determining how many such records exist. *See* Tr. of Status Conf., Oct. 28, 2014, at 16:19-17:3. The City has since reported that there is no particular code assigned to such complaints, but that it is possible to search databases of complaints for particular words or terms.

The plaintiff therefore now proposes that counsel for the parties confer about reasonable searches that can be conducted and that the defendants provide documents concerning similar cases the plaintiff has already identified. The Court previously expressed reluctance to allow

---

[1] More information about the CCRB's inquiry into this issue is included in the CCRB's draft semi-annual report for January-June 2014. It is available at: http://www.nyc.gov/html/ccrb/downloads/pdf/CCRBSemi_2014Draft.pdf

such discovery, in part because of the privacy interests of the parties involved in those cases. The plaintiff respectfully submits that any concerns can be addressed by an appropriate protective order.

**Pending Discovery Requests on Policies and Training**

In addition, two disputes remain regarding pending requests. I have conferred with Mr. Zuckerman, counsel for the defendants, about these issues, but we have not been able to resolve them. (The interrogatories and responses at issue are attached as Exhibits 1 & 2).

Interrogatory 14 asks the City to identify any training programs for NYPD cadets concerning individuals who observe, photograph, film, video record or otherwise document police activity, including a description of the total number of hours spent on such training. At the last conference, the Court stated that inquiries of this nature were reasonable. Status Conf. Tr., Oct. 28, 2014, at 14:18-22 ("Did they get a half-hour training and this was one minute of it, is this part of a one-week course, do you get it when you start, do you get it somewhere in between? I think those are reasonable questions for now."). The defendants' response—in a letter rather than in the form of admissible evidence—simply "refers" the plaintiff to the section of the Police Student's Guide relating to "Authority of Arrest" and corresponding lesson plans. *See* Ex. 2. Those documents do not, however, indicate the amount of time devoted to the question of the right to film police activity. (A sample is attached as Exhibit 3.) The plaintiff therefore requests that the Court order the defendants to answer Interrogatory 14.

In addition, the defendants have not meaningfully answered Interrogatory 16, which essentially asks for the identification of any training programs concerning the right to record police activity that the individual defendants have completed. In a letter, the City again "refers" the plaintiff to the section of the Police Student's Guide relating to "Authority of Arrest" and corresponding lesson plans. *See* Ex. 2. But as I have conveyed to Mr. Zuckerman, this response does not actually state that the individual defendants completed those training courses. I suggested that Mr. Zuckerman could simply consult his clients to inquire as to their memory of having attended relevant training programs and supplement the responses to the interrogatory accordingly. He initially agreed to do so, but informed me by email yesterday that he would not.

The question posed by Interrogatory 16 is a standard line of inquiry in a case asserting a failure-to-train claim. It and similar questions certainly would have been pursued during the officers' depositions if documents regarding training programs had been available at that time, and if Mr. Zuckerman had not objected to questions on policies and training generally. The plaintiff therefore requests that the Court order the defendants to respond to Interrogatory 16.

Finally, to ensure that the plaintiff's understanding of the policies and training materials produced thus far is correct, the plaintiff seeks to serve a small number of requests for admission concerning the NYPD's policies and training materials. Alternatively, a short 30(b)(6) deposition may be the appropriate vehicle to confirm, for example, that Police Academy instructors are not required to address the right to record police activity during training programs.

The plaintiff thanks for the Court for its consideration of these matters.

Respectfully submitted,

Alexis Karteron


c: Mark Zuckerman, Esq. (via ECF)
Counsel for Defendants